United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAISON D'ETRE BAKERY LLC,

Plaintiff,

v.

MASSACHUSETTS BAY INSURANCE COMPANY,

Defendant.

Case No. 23-cv-1401-EMC

**FINAL PRETRIAL CONFERENCE ORDER**

Docket Nos. 47-70

## I. TRIAL DATE & LENGTH OF TRIAL

Jury selection shall take place on September 8, 2025 at 9:00 a.m. Counsel shall be present in the Courtroom at 8:00 a.m. Screening of questionnaires for prospective jurors who obviously cannot serve shall be held on September 4 at 9:00 a.m. following the IT check at 8:00 a.m. in Courtroom 5, 17th Floor.

The jury trial shall begin on September 8, 2025. The trial days are: September 8-10, 12, 15-17. Trial shall last from 8:30 a.m. to 4:00 p.m. on each day, except for September 9, 16 and 17, when trial shall end at 1:30 p.m., and September 12, when the trial shall end at 3:30 p.m. On all trial days counsel shall be present in the Courtroom at 8:00 a.m. to discuss any matters requiring resolution prior to commencement of trial at 8:30 a.m.

The length of the trial is expected to last not more than 6 court days. Each party shall have up to 13 hours to present its case. This time includes opening statement, direct and cross-examinations and closing argument.

United States District Court
Northern District of California

## II. TRIAL PROCEDURES

To make trial more efficient, the Court imposes additional trial procedures. A party must give the opposing party **and** the Courtroom Deputy at least forty-eight (48) hours' notice of witnesses it intends to call, exhibits it intends to use, and/or demonstratives it intends to use. Saturdays and Sundays do not count. Thus, *e.g.*, for a Monday trial day that starts at 8:00 a.m., a party must give the opposing party notice by 8:00 a.m. on Thursday.

If the opposing party has an objection, then it must notify the party by 6:00 p.m. the same day of notice, and the parties shall meet and confer to see if they can resolve their differences. If they cannot, then they shall **file** with the Court a joint statement twenty-four (24) hours (excluding Saturdays and Sundays) in advance of the relevant trial day. In short, the Court requires a full court day to resolve any objections.

## III. WITNESSES

A. Raison Witness List

Raison has identified the following individuals as witnesses it intends call in its case-in-chief. *See* Docket No. 65.

(1) David Brogan
(2) Luke Vernon
(3) Josh Holmstrom
(4) Mark Borden
(5) James Kinsel (expert)
(6) Jacqueline Smart (expert)
(7) Errol Schweizer (expert)
(8) Jeanine Creighton
(9) Gloria Villareal
(10) Willie Mack
(11) Ralph Hoffman

(12) Stephanie Chien

B. MBIC Witness List

MBIC has identified the following individuals as witnesses it intends to call in his case-in-chief. *See* Docket No. 65.

(1) Willie Mack

(2) Josh Holmstrom

(3) David Brogan

(4) Mark Borden

(5) Joanne Salvaggio

(6) Micah Pilgrim (expert)

(7) Gary White (expert)

(8) Lisa Morris (expert)

(9) Alex Balian

(10) Stephanie Chien

No other witnesses may be called.

## IV. MOTIONS IN LIMINE

A. Raison's Motions in Limine (Docket No. 55-56)

1. MIL No. 1 to Exclude 25% Figure

Raison seeks to exclude under Rules 702 and 403 evidence and argument that approximately 25% of the product Raison sold to Albertsons in 2020 never sold to the end customer. This 25% number comes from a table compiled by MBIC's expert Lisa Morris, based on data in a spreadsheet produced by Albertsons. Raison argues that the 25% figure was calculated incorrectly, meaning that the calculation has no probative value and would mislead the jury. Raison also argues that MBIC's experts could not reliably make calculations from the Albertsons spreadsheet because there is no witness qualified to interpret the spreadsheet.

United States District Court
Northern District of California

In opposition, MBIC offers a declaration from Ms. Morris, conceding that she miscalculated the 25.46% figure due to a misunderstanding over when Albertsons began its fiscal year. She provides an updated table showing that in January, 2022 Albertsons still had 22.79% of Raison's product remaining, a variance of less than 3% from her original calculation.

MBIC argues that this table is admissible because (1) the Albertsons spreadsheet upon which Ms. Morris's calculations were based was authenticated by Albertsons Director of Category Management and Innovation Stephanie Chien, produced as Albertsons Person Most Knowledgeable by Albertsons, and (2) because Federal Rule of Evidence 1006 covers the table, which summarizes a 648-row spreadsheet. MBIC further argues that the Morris' table is highly probative of whether Raison's low sales post-fire were caused by the fire or another cause, namely, failure to gain traction with the end consumer.

Raison does not challenge Ms. Morris's credentials as an accountant or that she is qualified to make calculations of this kind. Rather, Raison attacks the factual assumptions underlying Ms. Morris's calculations. Under Rule 702, "an expert whose methodology is otherwise reliable should not be excluded simply because the facts upon which his or her opinions are predicated are in dispute, unless those factual assumptions are 'indisputably wrong." *Siqueiros v. GM LLC*, 2022 U.S. Dist. LEXIS 3651, at *19-20 (N.D. Cal. Jan. 7, 2022). A challenge to the data on which an expert relies goes to "impeachment and weight, not admissibility." *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2020 U.S. Dist. LEXIS 71982, 2020 WL 1955643, at *38 (N.D. Cal. Apr. 23, 2020).

Here, there is a factual basis for Ms. Morris's calculations—a spreadsheet produced by non-party Albertsons and authenticated by Albertsons PMK witness Ms. Chien. Raison argues that Ms. Morris has misinterpreted the unit amounts in the spreadsheet, but the interpretation of a given spreadsheet is a question of fact.

Raison's contention that the spreadsheet should be excluded because MBIC has no witness "qualified" to interpret that data also falls short. Again, the Albertsons spreadsheet has been authenticated by Albertsons' PMK witness. Raison argues that Ms. Chien should be precluded from interpreting the Albertsons data because she is not qualified as an expert under Rule 702. But

there is no indication that MBIC offers Ms. Chien in an expert capacity. Raison itself states that Ms. Chien has not advanced any calculations or opinions based on the spreadsheet beyond answering basic questions such as which columns contain data in dollars versus units.

Given that there is a sufficient factual basis for Ms. Morris' testimony, her calculations are admissible under Rule 702.

As to Raison's Rule 403 argument, MBIC has cured the original calculation that the parties agree is erroneous. Further disagreement over Ms. Morris's new calculation is a factual question for the jury.

MBIC may not refer to its admittedly incorrect 25.46% figure. Otherwise, Raison's MIL No. 1 is **denied**.

2. MIL No. 2 to Exclude Testimony of Alex Balian

Raison seeks to exclude the testimony of MBIC's expert Alex Balian as cumulative of the opinions offered by another MBIC expert, Gary White. Mr. Balian is a retail operations expert with over 60 years of industry experience as a supermarket owner and operator. Mr. White is similarly a retail industry expert, with over 35 years of retail operations experience. Raison provides a side-by-side chart showing that both experts discuss (1) whether Raison's sales projections at Albertsons were realistic (2) that not all Albertsons divisions agreed to buy Raison's product (3) that Albertsons stores were unable to sell around a quarter of the Raison products purchased (4) the relationship between low sales in 2020 pre-fire and low sales in 2022 post-fire, and (5) Raison's failure to adjust to the Safeway market.

MBIC argues that its experts present distinct opinions and focuses. Mr. Balian is an expert in "day-to-day ordering operations of grocery stores" and his "primary opinion is grocery stores will consider decreasing and stopping purchasing product when the product is not selling." Mr. White, in contrast, is a "high-level national retail executive and brand management expert" whose "primary opinion is Raison's sales projections lacked foundation and were unrealistic in the context of the Albertsons grocery chain." MBIC notes that Raison had the opportunity but chose not to take Mr. Balian's deposition, meaning that Raison is not in a position to claim that the two

experts have cumulative opinions.

MBIC's experts appear to have substantial overlap in their areas of expertise and the topics they discuss. However, both reports make non-overlapping points. For example, Mr. Balian's report emphasizes the need for grocery stores to keep shelf space active and decrease orders for products that fail to sell. Mr. White's report focuses more on the logistical demands of retail expansion and presents findings from market research he conducted on the parmesan crisp market. Further, it is unsurprising that both experts draw upon the same facts and data.

Plaintiff cites to two cases where courts excluded or sanctioned cumulative expert reports but neither is on point. *United States v. Alisal Water Corp.*, 431 F.3d 643, 660 (9th Cir. 2005) concerned a report submitted after trial which contained "facts known to and litigated by the parties at trial." In *United States v. Marabelles*, 724 F.2d 1374 (9th Cir. 1984), the district court found the expert's testimony lacked both reliability and relevance, in addition to being cumulative. Raison does not contend that either expert report reflects an unreliable methodology or is irrelevant.

In any event, because of the strict time limits imposed by the Court, the Court will not exclude testimony on the basis that it is cumulative under Fed. R. Evid. 403. If MBIC wants to use its precious trial time on cumulative testimony, that is its prerogative, however unwise it may be.

Raison's MIL No. 2 is therefore **denied**.

B.    MBIC's Motions in Limine (Docket No. 47-50)

    1.    MIL No. 1 to Exclude 95% Purchase Obligation Evidence

MBIC seeks to exclude testimony from former Albertsons employee, Gloria Villareal concerning whether Albertsons divisions had an internal commitment to buy at least 95% of the company's forecasted purchase estimate for Raison. Defendant bases its motion on contradictory testimony from Ms. Villareal's supervisor Stephanie Chien and argues that Ms. Chien's position at Albertsons affords her testimony "more weight." Dkt. No. 47. Defendant previously raised this argument in its motion for summary judgment. There, the Court declined to resolve this credibility

dispute. *See* Dkt. No. 38, February 9, 2025 Order on Summary Judgment at 14. The dispute is no more ripe for resolution at the motion in limine stage. *See e.g.*, *Samarzia v. Clark County*, 859 F.2d 88, 90 (9th Cir. 1988) ("[I]t is the exclusive function of the jury to weigh the credibility of the witnesses.").

MBIC's MIL No. 1 is therefore **denied**.

2. MIL No. 2 to Exclude Pejorative Statements

MBIC seeks to exclude Raison "from presenting pejorative statements, characterizations and connotations of evidence that places MBIC as an insurance company in a bad light and that otherwise have no relevance or foundation in this case." This would include but not be limited to precluding Raison's attorneys and witnesses at trial from describing MBIC's conduct using the adjectives and phrases: "unreasonable," "in bad faith," "egregious," "improper investigation," "selective reliance on facts," "ignored critical evidence," etc. MBIC contends statements of this kind are not relevant to the breach of contract issue being tried and would be unfairly prejudicial, since Raison's bad faith insurance claim was dismissed.

Raison contends that the MIL improperly seeks to control the diction of trial participants, rather than exclude any particular piece of evidence. If MBIC objects to the language used by its attorneys and witnesses, Raison argues that the proper time for MBIC to object is at trial, when there will be context for the Court to make a ruling. Further, Raison confirms in its opposition that it "does not intend to develop evidence at trial in support of" its dismissed bad faith and punitive damages claim.

The Court has found that as a matter of law, MBIC did not act unreasonably when it paid Raison 65% of Raison's projected sales to Albertsons. Dkt. No. 38, Summary Judgment Order at 23. "The critical factual question" that remains for the jury "is whether Raison's projections about its future sales to Albertsons were sufficiently reasonable." *Id.* at 6. Raison can characterize the coverage decision as wrong or unreasonable without asserting bad faith. The Court expects Raison to be mindful that MBIC's *mens rea* in handling of the claim is no longer a live issue. Should Raison counsel or its witnesses suggest misconduct by MBIC or otherwise raise issues

relevant only to a bad faith claim, the Court will entertain a proper objection under Rule 403. On the other hand, the Court considers both parties' interpretation of the contract and views on the coverage provided to be potentially relevant to the contract claim.

Any concern about the prejudicial impact of Raison's criticism of MBIC's interpretation of the policy and denial of benefits can be addressed, if necessary, by a limiting instruction. The Court directs the parties to meet and confer on (1) whether the Court should issue a limiting instruction on there being no bad faith claim, either as part of the main jury instructions or to be delivered if it becomes necessary during trial, and (2) the content of such an instruction.

Raison may not, *inter alia*, use the term "bad faith" to describe its claim. Otherwise, MBIC's MIL No. 2 is **denied**.

3. MIL No. 3 and 4

MBIC moves to exclude the testimony of Raison's two accounting experts, James Kinsel and Jacqueline Smart. Because MBIC makes similar arguments as to both accountants, the Court considers these motions in limine together.

Mr. Kinsel is an accountant hired by Raison during the insurance claims process to calculate its lost business income. Mr. Kinsel does not appear to have prepared an expert report for the litigation but submitted reports during the claims process. Raison has disclosed his testimony as concerning "his involvement in the claim, his analysis of Raison's losses, the documents and information supporting its forecasts and his communications with MBIC and its accountants, JS Held."

Ms. Smart is an accountant retained as a testifying expert by Raison in the litigation. Her expert report concerns whether Raison's claim for lost business income, as calculated by Mr. Kinsel, was reasonable and consistent with industry standards. She also provided a supplemental expert report calculating prejudgment interest.

Defendant seeks to exclude these experts' opinions under Rules 403 and 702.

*Rule 702*

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendant primarily attacks Mr. Kinsel and Ms. Smart's reliance on 2020 forecasts supplied by Raison. Defendant claims that in calculating Raison's lost business income, Mr. Kinsel "accepted plaintiff's June 2020 forecasts entirely and did not make any adjustments." MBIC argues that since Ms. Smart endorsed Mr. Kinsel's calculations without conducting an independent analysis of the 2020 forecasts, her report repeats his failings.

As discussed *supra*, an expert's opinion "should not be excluded simply because the facts upon which his or her opinions are predicated are in dispute, unless those factual assumptions are indisputably wrong.'" *Siqueiros v. GM LLC*, No. 16-cv-07244-EMC, 2022 U.S. Dist. LEXIS 3651, at *19-20 (N.D. Cal. Jan. 7, 2022).

The Court previously recognized in its summary judgment motion that there was evidence in the record supporting use of the 2020 projections, including that the forecasts were prepared by a party with no incentives to inflate sales (Raison's potential acquirer), were based on purchase estimates from another party (Albertsons) with an interest in making accurate purchase predictions, and that the projections were informed by current sales data at Albertsons stores, as well as Raison's track record with another large grocery chain, Whole Foods. Dkt. No. 38, February 9, 2025 Order on Summary Judgment at 6-9. A reasonable expert could rely on this data, even if the accuracy of the data were disputed.

MBIC cites an unpublished memorandum disposition of the Ninth Circuit, *Cooper v. Travelers Indem. Co.*, 113 F. App'x 198, 201 (9th Cir. 2004), which involved an economics expert who testified that in his "normal professional practice he would verify client-provided data before relying on it to reach a conclusion" but that in this case he "failed to follow this procedure." *Id.* Because the expert's testimony was admittedly "not based on the type of data on which experts in economics would reasonably rely," his testimony was properly excluded. *Id.* MBIC has not presented testimony suggesting that Mr. Kinsel and Ms. Smart departed from their own practice or the industry standard in relying on the Raison/Albertsons forecast or that to rely on that forecast under the circumstances here was so unusual or unreasonable as warrant exclusion under *Daubert.* Indeed, Ms. Smart states in her report that an expert could use "management-supplied projections that rest on assumptions that are testable, and that have a linkage to the operative reality of the

company's business." As discussed, the projections at issue here were based in part on current sales data and were informed by Albertsons' projection of its purchases from Raison. While MBIC claims that the forecasts were not linked to Raison's operative reality, this assertion is based on critiques offered by MBIC's expert Errol Schweizer (for example, that the Safeway and Whole Foods customers bases differed to such an extent that Raison could not use data from Whole Foods sales to forecast Safeway sales.) The factual disputes regarding the underlying data may be the subject of vigorous cross-examination, but it does not establish a basis for excluding Mr. Kinsel and Ms. Smart's testimonies under *Daubert*.

MBIC also argues that Ms. Smart improperly attempted to answer an ultimate question as to whether Mr. Kinsel's business income loss calculations were "reasonable." An expert may not opine on an "ultimate issue of law" because to do so usurps, rather than aids, the jury. *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017). MBIC relies on *Liu v. State Farm Mut. Auto. Ins. Co.*, 2021 U.S. Dist. LEXIS 34789, at *8 (W.D. Wash. Feb. 24, 2021), where the court excluded an expert who opined on whether the defendant acted reasonably in handling plaintiff's insurance claim under the ultimate legal issue rule. However, *Liu* concerned a bad faith insurance case where an "unreasonable denial" was the sin-qua-non of the ultimate question of bad faith. In contrast, the reasonableness of Mr. Kinsel's lost business income calculations is not an ultimate question for the jury. The jury could agree that Mr. Kinsel made reasonable calculations but still find that MBIC was not required to pay Raison any more than it did as a matter of contract.

For the reasons above and those stated in its summary judgment order, Defendant has failed to show a Rule 702 basis to exclude the accountants' testimony. Dkt. No. 38, February 9, 2025 Order on Summary Judgment at fn 6.

*Rule 403*

Defendant also contends that Mr. Kinsel and Ms. Smart's testimony is cumulative of each other. MBIC does not explain why their opinions are cumulative, other than arguing that both accountants "rubber-stamped" Raison's projections.

Raison argues that Mr. Kinsel is a percipient witness who created the initial calculation of lost business income, while Ms. Smart was retained to opine on the reasonableness of the lost business income calculations, making their reports non-duplicative. Raison notes that MBIC has also put forward two accountants, one retained during the claims process and one retained during the subsequent litigation.

Considering the accountant's differing roles via-a-vis the business income calculations, MBIC has failed to show that their opinions should be excluded under Rule 403 as cumulative. In any event, as noted above, given the strict time limits imposed by the Court, to the extent Raison is using its limited time to put on duplicative testimony, that is its prerogative, however unwise it would be.

*Ms. Smart's Prejudgment Interest Report*

MBIC argues that Ms. Smart's supplemental report on prejudgment interest should be excluded because Raison is not entitled to recover prejudgment interest.[1] Plaintiff represented at the pre-trial conference that Ms. Smart will not offer testimony on pre-judgment interest at trial, mooting this issue.

As the Court already noted in its Proposed Jury Instructions, Dkt. No. 75, in a contract case for non-liquidated damages, pre-judgment interest is discretionary, and the discretion is held by the Court, not the jury. *See* Cal Civ Code § 3287(b); *George v. Double D Foods*, 155 Cal. App. 3d 36, 47-48 (Cal. App. 1984). For the reasons stated on the record and as made obvious by the very nature of this case, which requires a two-week jury trial featuring multiple experts to resolve competing claims as to the cognizable business income loss, damages were not liquidated.

[1] MBIC also argues that expert report was untimely.

Accordingly, the Court **grants** the motion to exclude Ms. Smart's opinion on prejudgment interest from trial. Otherwise, for the reasons stated above, MBIC's MILs No. 3 and 4 are **denied**.

## V. WRITTEN DISCOVERY

MBIC has proposed using the below interrogatory responses, which include Raison's objections. Dkt. No. 63. The Court overrules these objects. The interrogatories should be used without the stricken text.

<u>Interrogatory No. 16 (at 2:16-3:5):</u>

DESCRIBE what the expenses reflected in each line item of Exhibit 9 to the deposition of Jim Kinsel (attached) sheet 5 (titled "3-other rebuilding expenses") were incurred for.

Response: ~~Objection. Responding Party objects to this request as it calls for information that is not relevant, nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Also, Responding Party objects to this request as Propounding Party already has any responsive information in its possession. Further, Responding Party objects to this request as it would be unduly burdensome and oppressive. Subject to and without waiver of the forgoing:~~ Responding Party directs Propounding Party's attention to Ex. 9, Sheet 5 (titled "3-other rebuilding expenses",) Column C (titled "Memo",) in which each line item expense, from Row 7 through 464, lists a description of the expense incurred. For example, the first expense item on Row 7, listed as "City of Brisbane" has a description of "Night use permit application for 470 Valley Drive".

<u>Interrogatory No. 18 (at 3:16-25):</u>

~~If the answer to interrogatory No. 17 is yes,~~ State when YOU submitted a request for payment of any of the expenses referenced in Interrogatory No. 16 to Massachusetts Bay Insurance Company.

Response: ~~Objection. Responding Party objects to this request as it calls for information that is not relevant, nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Responding Party further objects as this request is vague and ambiguous as to the terms "YOU"/"YOUR." Subject to and without waiver of the forgoing:~~ 11/11/2022

<u>Interrogatory No. 20 (at 4:7-18):</u>

~~If the answer to interrogatory No. 19 is yes,~~ State when YOU submitted documentation to support the expenses referenced in Interrogatory No. 16 to Massachusetts Bay Insurance Company.

Response: ~~Objection. Responding Party objects to this request as it calls for information that is not relevant, nor reasonably calculated to lead to the discovery of relevant or admissible~~

~~evidence. Responding Party further objects as this request is vague and ambiguous as to the terms "YOU"/"YOUR." Subject to and without waiver of the forgoing:~~ The supporting documentation was submitted as part of the claim email sent to Willie Mack, Micah Pilgrim and Cole Parker on 11/11/2022.

Raison does not propose to use any discovery responses.

## VI. EXHIBITS

The Court is in receipt of the joint exhibit list. Dkt. No. 64. At the pre-trial conference, the parties represented that they are currently engaged in meet-and-confer efforts to narrow the list of disputed exhibits. The parties are ordered to submit a joint list of remaining exhibit disputes by **September 3, 2025**.

The Court will not rule on exhibits until the supplemental joint exhibit list is submitted but offers the following guidance.

Hearsay

To the extent documents contain statements from a party opponent, these are not hearsay under Rule 801. Under the rule of completeness, Rule 106, the surrounding context for those statements may also come in. Sometimes the whole chain will be necessary context.

Regarding the business record exception, the Court does not treat emails as *per se* business records. The record in question must satisfy all prongs of the rule:

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6).

United States District Court
Northern District of California

United States District Court
Northern District of California

Contemporaneous emails by employees conducting the usual business of the company will tend to meet these requirements, assuming a proper foundation is laid. For example, Exhibit 30 appears to be internal discussion by employees of Schuman Cheese, Raison's supplier, about their filling of orders for Raison. Filling cheese orders and discussion amongst employees thereabout would seem to be a regularly conducted activity of the business. Further, the exchange has no indicia of unreliability—indeed, the fact that employees (who have no interest in and are not adverse to any party in this litigation) are expressing business concerns indicates that the discussion is candid. Documents of this kind would likely come in.

Relevance

As discussed *supra*, bad faith is not at live issue in the case. The parties may not introduce evidence for the *sole* purpose of indicating *mens rea* or good/bad faith. For example, MBIC's interpretation of the policy is potentially relevant to show that MBIC's payment of the claim was substantively correct or incorrect. However, such documents would not be admissible if introduced only to show that MBIC handled the claim in good or bad faith. The same goes for evidence submitted by Raison.

Summaries

There are several charts and tables in the joint exhibit list. Summaries are admissible under Rule 1006 if the underlying document or documents the summary is based on are admissible evidence.

Foundation

Foundation objections may be re-raised at trial if no proper foundation is laid.

## VII. CONSEQUENTIAL DAMAGES

On August 11, the Court requested supplemental briefing as to whether MBIC had received notice of Raison's claim for consequential damages. Dkt. No. 67. The Court now finds

that Raison's eleventh hour bid to recover consequential damages is precluded under Rules 26 and 37. Raison also lacks admissible evidence sufficient to prove consequential damages as a matter of law.

The Court begins with the notice question. Raison's complaint stated, "Because of MBIC's unreasonable delays and underpayment of the business income and extended business income claims, Raison D'etre Bakery has suffered, and will continue to suffer, additional losses beyond the limits of the Policy and other consequential damages that will be proved at the time of trial." Dkt. No. 1, Complaint at ¶ 33. In the prayer for relief, Raison stated that it sought "Special and general damages for MBIC's breach of the duty of good faith and fair dealing" and "Damages for MBIC's breach of the contractual duty to pay a covered claim under the Policy." *Id.* at 44. Raison did not specifically seek special damages (consequential damages) for its contract claim.

Raison's initial disclosures stated that it claimed, "Consequential damages suffered by Plaintiff as a result of not receiving full and fair payment under its Massachusetts Bay Insurance Company insurance policy." Dkt. No. 69, Ex. 1 at 4. No further details were provided, including a calculation of the consequential damages. Raison never updated its initial disclosures.

MBIC also served a contention interrogatory on Raison, asking it to "ITEMIZE in full and complete detail each item of damages YOU attribute to any acts or omissions on the part of MBIC." Joint Trial Exhibit 153, Interrogatory No. 10. Raison's answer to this interrogatory did not mention consequential damages, and it did not supplement its response. The only mention of consequential damages in Raison's interrogatory responses was in answer to the question, "State all facts on which YOU base YOUR contention that MBIC is liable to YOU for Breach of Contractual Duty to Pay a Covered Claim." *Id.* at Interrogatory No. 1. Raison repeated the language on consequential damages from its complaint verbatim, without further elaboration.

In its trial brief, Raison appears to *for the first time* have attached numbers to its consequential damages claim. Raison claimed that because MBIC did not "reasonably and timely" pay Raison's claim, Raison's owner Ridgeline Ventures was "forced to inject $5.9 million into the bakery. Dkt. No. 54 at 12. Because of this, Raison claims it missed out on "potential business with Wegmans and Kroger," which it forecasted could yield "approximately $3.6 million in revenue."

*Id.* Raison claims to also have "missed out on expanded sales to existing clients, which it forecasted would produce approximately $2.2 million." *Id.* These categories of consequential damages total $11.7 million, *more* than Raison seeks in damages under the insurance policy itself. Dkt. No. 54 at 11-12. However, in its supplemental briefing, Raison stated that it had not yet "quantified" its consequential damages. Dkt. No. 69 at 1. At the pre-trial conference, Raison's counsel was unable to put a number on the amount of consequential damages Raison seeks.

While California pleading standards do not govern this federal action, *see e.g.*, *O'Sullivan v. AMN Servs.*, 2012 U.S. Dist. LEXIS 98560, at *17 (N.D. Cal. July 16, 2012), it must be noted that California law requires consequential damages to be pled with particularity to avoid "surprise." *Shook v. Pearson*, 99 Cal. App. 2d 348, 351 (Cal. App. 1950). This is because a defendant "cannot be presumed to be aware of the special damage resulting from his act." *Id.* The California standard underscores the importance of alerting a defendant to the particular consequential damages claimed.

Rule 26(a)(1)(A)(iii) which, of course, does apply here, requires a party to provide "a computation of each category of damages claimed," as well as "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." While a plaintiff may not be in a position fully to quantify its damages at the outset of litigation, it is obliged to supplement its disclosures as the case develops. Rule 26(e). As discussed, Raison's initial disclosures cursorily mentioned consequential damages but provided no "calculation" as required under the rule. The disclosures were never supplemented to provide any such calculation. Raison also failed to provide a calculation of its claimed consequential damages in response to a contention interrogatory seeking itemized damages. Under Rule 26(e), Raison was obligated to supplement its response to this interrogatory but never did so with respect to consequential damages.

Raison argues that MBIC should have deduced Raison's consequential damage calculations from various Raison documents and deposition testimony from Raison employees. This argument misses the mark on two fronts. First, the disclosure rules exist precisely to prevent a party from having to engage in a guessing game on damages. To the extent that consequential

damages were apparent and calculable from Raison's internal documents and its employees' knowledge, which Raison has had access to from the inception of its case, the Federal Rules lay the burden on Raison to disclose this calculation to the defendant. Second, it is difficult to see how MBIC should have been expected to know the amount of damages Raison claims, when—less than a month out from trial—Raison admits that it itself doesn't know the amount. Raison has violated the disclosure requirement of Rule 26(a)(1)(A).

Rule 37(c)(1) provides that a party failing to provide information required by Rule 26(a), or to supplement its discovery responses in accordance with Rule 26(e) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175, 1179 (9th Cir. 2008); *see also Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323 (C.D. Cal. 2004) (applying Rule 37 to exclude evidence that a litigant failed to identify in original interrogatory answers or in a Rule 26(e) supplement). Rule 37's sanction is "self-executing," "automatic," and does not require any finding of willfulness or bad faith. *Hoffman*, 541 F.3d 1175 at 1180. The sanction is appropriate even when it would preclude a litigant's "entire cause of action." *Id.*

The Court finds there is no justification for Raison's failure to disclose consequential damages calculations it intends to present at trial. This is not merely a case of belated disclosure; Raison's damages remain "not quantified" even on the eve of trial. Dkt. No. 70 at 1. This failure is not harmless. Had MBIC been alerted to the amount and basis for Raison's consequential damages claim, it would have doubtless taken discovery on the issue and retained expert testimony.

While Rule 37 is sufficient to preclude Raison's consequential damages theory, the Court is also skeptical that Raison could vindicate its claim for consequential damages as a matter of law on the record Raison proposes.[2] California follows the common law rule of *Hadley v. Baxendale* (1854) 156 Eng.Rep. 145 that special damages "beyond the expectations of the parties" are not recoverable. *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 970

---

[2] MBIC also claims that the underlying insurance policy has an exclusion for "consequential loss," an issue that the Court will not consider at this late stage. Dkt. No. 69 at 1.

United States District Court
Northern District of California

(Cal. App. 2004).; *see also* Cal. Civ. Code § 3300. Claims of lost profit on future business are typically barred because it is "uncertain" whether the business would have materialized. *Id.* at 976.

Here, Raison has articulated a chain of causation as follows: because MBIC underpaid its claim, Raison's owner was forced to provide $5.9 million in additional capital into the bakery to keep it running. This capital "could have been used to drive sales" but because it was not, "Raison missed out" on "potential business with Wegmans and Kroger" and on "expanded sales to existing clients" that Raison collectively values at $5.8 million. To establish this claim, Raison would have to show that the potential business and expanded sales were more than speculative. This would not be a straight-forward showing. It is difficult to see how Raison could establish this through the only evidence on the subject it intends to offer—testimony from Raison's own owners and officers, with no expert testimony or analysis. Dkt. No. 54 at 12. As a point of contrast, Raison's direct damages claim under the policy concerns a concrete business deal with sales forecasts provided by a third-party vendor (Albertsons) with whom it had an agreement, and Raison put forward three experts to prove up the damages sum. Yet, Raison would offer no expert testimony to substantiate losses supposedly resulting from the inchoate business opportunities it now claims, opportunities not supported by any contract or even a Request For Proposal. *See* Dkt. No. 65, Joint Witness List. Even if there were not such a clear-cut notice problem under Rule 26, the Court could not instruct the jury on consequential damages where Raison lacks sufficient evidence to prove the claim.

For the reasons stated above, Raison's consequential damages theory is precluded under Rules 26 and 37. Raison may not offer evidence or argument on consequential damages at trial and the jury will not be instructed as to consequential damages.

## VIII. JURY INSTRUCTIONS & JURY VERDICT FORM

The Court has issued proposed jury instructions. *See* Dkt. No. 75. The parties shall meet and confer to discuss any changes to the proposed jury instructions, including whether a Substantial Factor instruction would be helpful to the jury. The parties shall inform the Court of any stipulated or disputed revisions to the proposed jury instructions by **September 3, 2025**.

The Court has issued a proposed jury verdict form contemporaneous with this order. The parties shall inform the Court of any revisions to the verdict form by **September 3, 2025** as well.

**IT IS SO ORDERED**.

Dated: August 20, 2025

EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California